The next matter, number 25-1395, Thomas R. Narrigan v. Debra B. Goldberg. At this time would counsel for the appellant please come to the podium and introduce herself on the record to begin. Good morning, your honors. May it please the court, Terry Rose Saunders on behalf of the appellant Thomas Narrigan. May I request, your honor, one minute for rebuttal? You may. Thank you. The district court in this case dismissed the complaint for lack of subject matter jurisdiction based on the conclusion that the plaintiff alleged only a past injury. And because the taking of his property had occurred in the past. But in this case the plaintiff is alleging a future injury. The claim is based on the Fifth Amendment, not the taking of his property, which the Fifth Amendment does not prohibit, but the failure of the act to provide just compensation for this taking. And that is a future injury which will occur when the plaintiff actually claims his property and under the act as it exists today, it would be returned to him without any compensation, just the property. And nothing to take into account the use of that property for public purposes during the time that the state commonwealth here was holding it. Go ahead. I'm a little confused. Are you agreeing that you couldn't challenge, too late to challenge the taking of the property? Well, it's a taking. It's an unconstitutional taking because when it was taken and the act requires this, there's no payment of just compensation. Are you saying that it's too late to challenge the taking? No, it's not too late to challenge. What I'm saying is he's not saying you can't take possession of this property. You can take possession of the property as long as you compensate for your use of the property as of the time that you take it. It's immediately used. Therefore, there's an immediate requirement. So the taking occurs, the taking without just compensation occurs the minute he's aware that the property was taken and he's not going to get the full interest he was owed. Is that right? Well, the taking occurs. The taking without just compensation occurs the minute he knows the property was taken and he's not going to get the full interest. I would say that the taking without just compensation occurs when the taking occurs, when the Commonwealth takes the property and begins using it. On your view, when did he learn that this was his property? Maybe three, four years ago. Four years ago. Yeah. And on your view, he could wait 100 years and basically treat the state of Massachusetts as his bank and then say, I'd like all the interest that I was due for the last 100 years? Well, Your Honor, there is — Is that just a yes or no to that question? No. Why not on your theory? Statute of limitations. Okay, so what's the statute of limitations for the claim? Then that would go back to sort of a tort, depending on what it is in a particular, in the Commonwealth, let's say five years. So it's not a continuing tort? It is. Oh, it is continuing? It is. So then is your view that he could wait 100 years? Well, there's — In other words, at what point — he can get the money back. He gets the property back. The minute he gets the property back, he doesn't get any interest, correct? That's correct. He can get that property back the minute he learns they took it. That's correct. He chose not to ask for it back. He chose not to ask for it because he won't get the compensation. So what compensation are we talking about? One idea would be the amount of compensation he would have been owed at the moment he could have asked for it back. You're saying actually somehow it's the amount of compensation he would be owed, I don't know, for what stretch of time. And I don't understand why that would be. I get the argument that at the moment he learned about it, at that moment there was some — I don't even know if there was much time, how much time it would have been. I mean, he learns of the property. Now he wants it. Is he saying that whole period of time where he didn't even know where it was, he's also supposed to have gotten the full interest for that period of time? That would be — yes. Okay. So then at a minimum, then it would say when he learned about it four years ago, he wants the amount of interest that accrued during the period of time that the State held the property up until the time he learned about it. That would be his starting position. And I don't understand why there's a further position that he gets to. Well, the further position would be, Your Honor, that the State, even though it had an obligation, because there was no judgment or requirement under law that the State pay that just compensation, that the court would not require to go backwards, which is the way — that's what the Fourth Circuit has held in this case. So I'm puzzled. Are you saying he could drive up to a State office, take $1,000 and say, I'm abandoning this, and then come back four years later and ask for the $1,000 plus all the interest? That seems to be what you're saying. Well, that wouldn't be the way the statute — that's not the way the process works. Okay. Instead of handing it to him, he puts it in a bank account that he abandons and the State takes it. The State takes the property. He doesn't know about it. Well, he knows he abandoned it. It's not abandoned property. I mean, going back — No, no. Judge Kida's hypothetical is now that he learns about what you can do. Sounds great. I'll open a bank account and I'll forget about it. I know what happens when I do that. It goes to the State. And I know what interest rate I'm getting. So what are you doing with your money? Well, I left it to the State. It's got this interest rate. It's awesome. And when are you going to collect it? I don't know. We'll see. When I need it. I'm sorry. That seems a little strange. No, but of course it's not economic right now to let the State do it, given that it pays one — There is interest paid under the statute. It's one percent. It's better than an FDIC-insured account because you've got the whole State Treasury behind you. Well — And on your view, what's the rate that he's owed? The market rate, right? The market rate. Yeah. Correct. Without market risk. Without market risk. It's a good deal. Well — It's pretty outrageous the State does that for you. Well, the problem would be — I mean, in this case, there's a complaint. So his claim is not — he's filed the complaint, so there's not a problem with that. And he would get his property back as soon as his claim was processed. Counsel, if I might, one of the State's arguments is that you don't have standing, your client doesn't have standing, because he hasn't even yet gone through the process to establish that the property he claims is his. Could you address that, please? You know, you just have a mere allegation it's his property. We don't even really know what it is, when he acquired it, when the State took it. None of that stuff, all of which could have been established if he made a claim, but he's chosen not to. Your Honor, the State — the information that the plaintiff has is what the Commonwealth has, but they have more information. They know what the property is, but they don't report that. What they report is his name and his address and a very general description of what the property is, and that's the basis that he knows there is some unclaimed property that's being held by the Commonwealth. Okay, so this lawsuit — may I? The thing that triggered this lawsuit was the notice that the Secretary of State puts in the newspapers? In fact, no, what leads to this is that this is something that happens elsewhere, and his name was identified by someone else looking through the reports that are on the Commonwealth's Treasurer's website. So that's where the information comes. I don't know if anybody really goes and looks in the newspaper anymore anyway, but there is a website that — and there's some notice from the Commonwealth. The Treasurer puts out some notice that this information is available on its website. To Judge Lidge's point, until it's established it's his money, he doesn't have any right to the interest. Do you agree? That's correct. Yeah, so the one question we could ask is, what in the complaint establishes that it's his money? The only information we have — and this is on a motion to dismiss, so there's been no further discovery. The Commonwealth doesn't make that information available. But they are the ones who report it as being his property. But they didn't report this is — they just reported a name. And an address, Your Honor. And an address and some asset. Yes. So how does that establish he has money? In other words, is he alleging — he's alleging on the basis of that that it's plausible that he has money? That's the idea? Well, that he had unclaimed property which has been converted into money and cash that the Commonwealth is then using. But that's the information he has. That's what anyone has at the point where — But he could have — I think Judge Lynch's point is he certainly could have more information. It would be difficult for him to have more information. Wouldn't he then go and make a claim in response to that? If he makes the claim, then immediately he loses his claim for the just compensation because it's precluded under the statute the way it exists now. In other words, he could go make his claim and say — you know, file a claim and then there would be a further regard on what the property is. And then whatever their information is. But the Commonwealth has that. He doesn't. And on — Why would that prevent him from making a takings claim at that point? He could make a — oh, because then we go back to the fact that he's then seeking — he's made his claim. He's made his claim. And probably what would happen is they would — he would get his unclaimed property immediately and then he would no longer have a continuing violation because they're — it's very circular, but they're no longer — And that's bad? He wants a continuing violation? No. Yes. He wants it until he — Well, you usually don't let people have standing if it's a self-inflicted injury, so that's not good. He would no longer have the standing at that point because he had — his claim had been satisfied. The Commonwealth was no longer using his property. Right, but he'd have a claim for the unpaid interest. Not in federal court. This would get you into an Edelman situation where now what he's seeking is restitution for the prior bad acts of the Commonwealth, not an ongoing violation because they're no longer using his property. He has it. I mean, that's a conundrum of why he can't — Well, if the statute were changed and the Commonwealth were paying just compensation, yes, immediately he should go in and they could set any kind of restriction. They could say, you know, after a certain number of years, and they do now. I'm sorry, Your Honor. Isn't this whole lawsuit just a stratagem to get the Massachusetts legislature to raise the interest rate that they're paying? And you could bring the claim in state court. You could actually bring a just compensation claim in state court, say the 1% interest rate is too low, but you prefer to be in federal court in a case in which the lawsuit is engendered, merely by somebody telling you the Secretary of State has published this information? Isn't that what all of this is about? Well, Your Honor, that's where it starts. But, of course, he has — the question is he's got a constitutional right to go into federal court, and that's well established. There is a taking. It may be — we're talking about $3 billion that's being held by the Commonwealth, and they do have an obligation — If you bring a class action. This is a class action. It hasn't been certified. No, not yet, but it's brought as a class action. And what the primary relief is, is to get some change and have the treasurer required to pay what is the just compensation, as opposed to 1%, or as opposed to what it's based on now, which is what was done with the property before that. So, there's a Fifth Amendment claim here, and there's a right to bring it in federal court. And the fact that, oh, Mr. Narrigan could go to state court and bring an inverse condemnation claim, that wouldn't change the law. That assumes on the merits, presumed abandoned somehow makes it your property during the period in which it's presumed abandoned. That's correct, Your Honor. And there's nothing in this law that would establish that the property is abandoned. It's not treated that way. It's treated as presumed abandoned. It's treated as you have a continuing right. You own that property. I thought it said it's presumed abandoned. It's presumed abandoned. That's what they call it. Right. We have to figure out what the — if we got to the merits, we have to figure out what the status of that is under the takings law, vis-a-vis whether during the period where it's presumed abandoned, it's your property. But it's called presumed unclaimed or abandoned. Yeah. Either one. So, let's say his is presumed unclaimed, at which point it's considered — but he still owns the property. There's no attempt to change title or ownership. And there's — the fact that the Commonwealth is even paying any interest suggests that they don't really consider this abandoned property. And it hasn't eschated. There haven't been the kind of due process requirements for eschating property under this statute. I mean, there's — it's still his property. Thank you. Thank you, Your Honor. Thank you, Counsel. At this time, would Counsel for the Massachusetts Goldberg please introduce himself on the record to begin? Thank you, and good morning. May it please the Court. Archon Jacob, Assistant Attorney General, on behalf of Treasurer Goldberg. I'd like to start briefly just to correct a point that my sister raised at the end of the argument just now with respect to abandonment of the property. I would note under General Laws, Chapter 200A, Section 9, when property presumed abandoned or unclaimed property is delivered to the treasurer, it vests in the Commonwealth as a matter of law. And, you know, pursuant to Section F of that — or Paragraph F of that section, I'd note, with respect to title, for tangible property, when that property is liquidated at auction a year after the Commonwealth comes in possession of it, absolute title passes to the purchaser, which I think logically can only happen if the Commonwealth is in possession of title in the first place. So I would disagree with Attorney Saunders that there has been no achievement, there has been no abandonment of this property. I think as a matter of law, there has been. And to the degree that, you know, my opponents may have due process questions about that, I don't think that's this case. So that's not the case that's been brought here. In any event, I would say the Court should affirm that — Assuming that's the right reading on the merits of the law, does that word vest in the statute? Yes. That is General Laws, Chapter 200A, Section 9, Paragraph A. And we cited it in our brief, I think. After it vests in the Commonwealth, since someone can then claim it and get it back, how does the statute explain what's happening at that point? Is it titles transferred at that point, or how does the statute describe legally what's going on when the person gets it back? Your Honor, in terms of how the statute describes it, I think it's — the best way to understand it, I would say, is that, yes, when a claim is made and the claims process is pursued and the treasurer determines that a true owner exists and has submitted a claim, then the title is transferred back to the true owner. And are there some words in the statute that you're relying on to draw those conclusions that true owner title returns back? Like, what is the statutory terminology that's relevant? Or you can even tell me the provision I should look at. I would say — so the provision that I would say would be Sections 9 and 10 of Chapter 200A. That's where I would go to look at — in terms of Chapter 10, in terms of the procedure and the implementing regulations, we may also be instructive on this, but I would look to Chapter 10 for the procedure when a successful claim is made. With respect to whether and to what extent the property is issued to the Commonwealth or the Commonwealth takes title to the property, that I would look to Section 9. Again, Paragraphs A and F, I think, are most instructive on that point. I understand it may take some determination of what the term best means in this context, but I would argue that it certainly, whether or not it's a term to mean title, certainly implicates specific legal rights in the property. And what is — I understand, I think, this word presumed, that's in the statute? That is in the definition section, yes. And is it presumed unclaimed or abandoned? Presumed abandoned, Your Honor. Presumed abandoned? Yes. And where does unclaimed come in? That, I would also need the Section 1 of the statute in front of me to speak directly to that, Your Honor. I don't want to misspeak before this Court. In any event, Your Honor, I would say, with the time I have left, the Court should affirm this judgment of the District Court for three distinct reasons. As the District Court, Mr. Narrigan lacks standing to pursue prospective injunctive relief, and therefore his claim, which essentially seeks retrospective relief, for several of the reasons discussed during the previous argument, is barred in federal court by the 11th Amendment. What about the declaratory judgment piece? Put aside the prospective injunction. The 11th Circuit seemed to think you could get a declaratory judgment because if you got a judgment that there had been a taking, that would facilitate you in then being able to get just compensation, unless I'm misunderstanding what the 11th Circuit said. I am not sure that you are misunderstanding that, Your Honor. In fact, I doubt that. But I would say that that is inconsistent. The 11th Circuit also held that there was standing to pursue injunctive relief. But I think that, for several reasons, and I think the overwhelming weight of other circuits have disagreed, and I think that the Supreme Court's precedence in Nick and in Monterey Dune's case, which we didn't cite in a brief, but I can give the score to that case site, for various reasons I think Marin was incorrectly decided. But I would say that with respect to declaratory relief specifically, I think it was consistent for the 11th Circuit with Edelman to decide that if injunctive relief is available, declaratory relief can be available in this context. But I would note that to the extent that this Court would determine that a prospective injunction is not appropriate, I think that Edelman indicates that declaratory relief is also not an end run around the 11th Amendment in this context. So I think Marin is internally consistent on that point, but I don't know that you can split that baby. I think it either has to be that both forms of equitable relief are available under Ex parte Young or neither one is.  And so why is it not? Put aside Ex parte Young. Just do standing first. Why is there a standing problem? Well, I would say, again, Your Honor, I know Attorney Saunders disagrees, but I do not read the complaint as alleging a future injury, certainly not in the sense that Mr. Narragan will abandon property in the future or even necessarily that he will seek to reclaim his property. The allegation is actually somewhat, I think, in terms of the harm stated, and you can see this echoed in the Eleventh Circuit's opinion in Marin, actually. The allegation is somewhat inconsistent with respect to the harm. It states that he's already suffered an injury which accrued at the time of taking, and that is, as far as it goes, consistent with the Supreme Court's holding in Nick. And yet that the injury is ongoing as long as he doesn't receive just compensation. But I think that is internally inconsistent. On the one hand, he says his harm occurred in the past when property entered state custody. But when it comes to the question, and the district court pointed this out, whether that harm is remediable by money damages, then it's argued that the harm is actually ongoing and that equitable relief is appropriate. And so the Fifth Circuit's opinion in James v. Hagar, I think, is on point here. As the Fifth Circuit held, there's no standing to pursue injunctive relief where the plaintiff is only alleged that he was injured by past takings, even where it's alleged that the government continues to unlawfully withhold property. What is the injunction he wants? What is the injunctive relief he wants? I understand the injunctive relief essentially to boil down to if and when he seeks to reclaim his property, he will be entitled to an interest rate of his choosing or a market interest rate. That's how I read the complaint. The typical injunction in this type of thing would be, don't take my property or give it back because you're refusing to do so, right? Exactly. And I think that that is – Nick is instructive on a couple points. I know it's not a standing case, and I think we agree on that. But part of – Nick could be ended up in federal court for two reasons. One, it would involve the municipality, of course, but also I think there are – May I ask, is there a potential rightness issue here? I mean, to Judge Lynch's point, since there's been no request for the property and therefore no moment at which the property has been returned with the insufficient interest, and the only taking he's alleging occurs when he gets the property back without insufficient interest, is there just a rightness problem in the sense that since that hasn't been requested, he simply can't – he has no claim yet? And if what he's saying is, I have a right to have you hold my property with my consent at the rate that's higher than you would give me, that just seems hard to describe as a takings. I would agree with that, Your Honor. I think, you know, for several reasons, the reason, of course, that we think this court should dismiss is this is not a takings claim in our view, but I think that with respect to the rightness issue, that's not – that's not the argument that, you know, my colleagues presented in the district court. That's not what the district court decided, but I think that is a perfectly valid way to look at – Counsel, the dividing line between standing and rightness is often really fuzzy, and I don't think, you know, if a case isn't right, it also has a jurisdictional defect. I thank Judge Barron. In fact, I've been thinking of this case all along as one presenting a rightness issue. It may have been argued in terms of standing, but the two doctrines are really close and frequently intermingle the relevant concepts. I appreciate that, Judge Lynch, and I hope I didn't misspeak. I meant to agree with Chief Judge Barron rather than dispute the rightness framing. But I think, Chief Judge Barron, that – We're glad you listen to us. I'm sorry? We're glad you listen to us. Very often lawyers don't. But to that point, Chief Judge Barron, I would say that I think you alluded to this in the previous argument, but there is something of a clapper issue here as well with respect to the nature of the harm alleged in the sense that, you know, the plaintiff could reclaim his property and is sort of choosing not to in a sense to manufacture an injury that is right for injunctive relief. And that's, as, you know, opposing counsel fairly candidly agreed, a methodology to get into federal court notwithstanding the limitations of – or within the narrow exception of ex parte liaison and notwithstanding the Eleventh Amendment. And so I guess I know my time has expired. I'm happy to answer any further questions that the Court has, but I think that the Eleventh Amendment, I will conclude with that, is one of the most significant reasons, but out of several, that the Court should affirm. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce herself on the record? She has a one-minute rebuttal. Terry Rose Saunders again on behalf of Plaintiff Thomas Narragan. Just let me clarify a few things. The taking occurred when the Commonwealth was delivered the property. That was the taking, and that actually gives the plaintiff his claim. And the taking then – What if we disagreed with you and we think the taking only occurs when you claim it? Until you claim it, we don't know that there's a taking because we didn't know it was your property during that period. Now, you can test that, but that's a merits issue, isn't it? That would be a merits issue, but we would just say under Nick the taking occurs, as a matter of whether you know it or not, when the property is actually delivered to the custody of the Commonwealth. And, yes, you don't know about it. It's just an odd thing since the claim of harm is the nonpayment of the interest, and I just don't know how to think about Nick in a context in which you're aware that the taking has occurred. You could get the thing back at that moment at whatever interest they would pay. That would not be just compensation as to that period of time, and yet you seem to want the claim to be, and therefore we can wait. And I just don't understand that. As a practical matter, one wouldn't wait. You aren't waiting. Well, we filed a lawsuit so that in the future, when the claim is made, you get your justice. But he learned about it, I thought, was four years before. When did he file the suit? The lawsuit was filed in the beginning of 2024. And when does it allege he learned about having the unclaimed property? I don't know that that's even, that's not in the complaint as to. I see. Okay, thank you. I just clarified two things that the court did ask the defendant's counsel. The term presumed unclaimed is used in the definition section. It just says abandoned refers to property presumed, unclaimed, and abandoned. And the other reference to the statute, there's the use of the term vest, but right after it is subject to the provisions of Section 10, which, again, gives the owner of the property the right to claim the property at any time in perpetuity. And the only third thing is the title we're talking about never goes to the state. The cash, presumptively, that the state has to give title when it transfers or liquidates the tangible property that was unclaimed, but in return to the extent it's going to get something for it from the purchaser of that, the purchaser then gets the title, but not the state. The state never has the title. Thank you. Thank you, Your Honor. Thank you. That concludes argument in this case.